## THE PRESIDENT *ex rel.* MORAN *et al. v.* MAYOR, ETC., OF CITY OF ELIZABETH.

### (*Circuit Court, D. New Jersey.*  December 17, 1889.)

1. MUNICIPAL CORPORATIONS—JUDGMENT—MANDAMUS TO LEVY TAX—CONTEMPT.
    Act N. J. March 27, 1878, entitled "Supplement to an act entitled 'An act respecting executions,'" which provides that the assessors of taxes of a municipal corporation shall, upon service of a copy of a writ of execution, assess the moneys to meet it, does not disturb the charter mode of levying taxes by the common council of the city of Elizabeth, as amended by Act N. J. April 2, 1869, and the neglect of the common council to levy a tax to pay the interest on its bonds, in obedience to a writ of *mandamus* from the circuit court of the United States, is a contempt punishable by attachment.

2. SAME—OFFICERS LIABLE.
    Where a city charter vests in the common council the power of levying taxes and filling vacancies, the mayor, comptroller, and treasurer cannot be attached for contempt for disobedience of a writ of *mandamus* to make such levy and fill vacancies in the board of assessors.

3. SAME.
    Where there is a peremptory writ of *mandamus* to the common council of a city to levy a tax and fill vacancies in the board of assessment, disobedience of the writ cannot be justified by showing that another course of procedure preliminary to the granting of the writ could have been selected to collect the tax to pay the indebtedness for which the writ issued.

Motion to Attach for Contempt.

This is a motion to attach the mayor, comptroller, treasurer, and common council of the city of Elizabeth, for contempt for failure to obey a peremptory writ of *mandamus.*

*Strong & Mathewson,* for relators.

*Mr. Bergen,* for respondents.

GREEN, J.   From the recital in the peremptory writ of *mandamus* sued out in this cause, it appears that the relators, Charles Moran, D. Comyn Moran, and Amandee D. Moran, on the 9th of June, 1888, in the circuit court of the United States for the district of New Jersey, recovered a judgment against the city of Elizabeth for the sum of $9,802.12 debt, and $57.98 costs of suit; that said judgment was rendered against the city of Elizabeth for interest due by it to said relators upon bonds of the said city, held and owned by them; that a writ of execution was duly issued out of said circuit court upon said judgment against the said city of Elizabeth, directed to the marshal for said district of New Jersey; that said writ was returned unsatisfied, there being no property belonging to the said city sufficient to satisfy said writ; that a copy of said writ of execution was duly served by the marshal of the district upon the defendant; that there were at that time eight vacancies existing in the board of assessment and revision of taxes for said city of Elizabeth, on account of the resignation or failure to qualify of the persons theretofore elected as members of said board; that the said board constitute the only assessors of the city of Elizabeth, who are, by law, required to assess the taxes in and for said city; that it was the duty of the city of Elizabeth and the board of assessment and revision of taxes to assess

and levy, in addition to the regular taxes, the amount due to the said relators on their said judgment, and to collect and pay the same to said relators; that it was the duty of the common council of said city of Elizabeth to fill any vacancies which might exist in the board of assessment and revision of taxes of said city; that the city of Elizabeth and the said board of assessment and revision of taxes have neglected and refused to perform their said duties, and have neither assessed nor collected nor paid to the relators any part of their said judgment; and that the common council has not filled, or attempted to fill, the vacancies in said board. The mandate of the writ was that each of the defendants do assess and levy, in addition to the regular taxes, the amount due upon the said relators' judgment, with interest and costs, to be assessed and collected according to the form of the statute in such case made and provided; and that the president and members of the common council of said city of Elizabeth forthwith should fill any vacancies existing, or which may exist, in said board of assessment and revision of taxes for said city of Elizabeth.

This writ was duly served upon the mayor, the comptroller, the treasurer, and the common council of the city of Elizabeth on May 10, 1889. No service was made upon the board of assessment and revision of taxes. The only return made to the writ is by the common council, and it is to the effect that the common council have elected certain persons, naming them, to fill vacancies in the board of assessment and revision of taxes. There is no pretense that the amount due the relators upon their judgment, or any part thereof, has been, by either of the defendants, assessed or levied, collected or paid over to them. It further appears, in the testimony taken on this rule to show cause why the defendants should not be attached for non-obedience, that although the writ of peremptory *mandamus* was served upon the common council on May 10, 1889, no steps were taken to obey its mandate "to fill forthwith any vacancy in the board of assessment and revision of taxes" until September following, at which time the persons named in the return were elected; that not one of the persons so elected has taken the required oath of office, or in any wise legally qualified himself to perform the duties so cast upon him, but, on the contrary, each has neglected or refused so to do. It is alleged that this neglect or refusal was the result of a combination or conspiracy to avoid the performance of the act commanded by the writ of *mandamus.*

A motion is now made on behalf of the relators to attach the defendants as for a contempt, because of their failure to obey this writ, and it is claimed that their disobedience arises in two respects: *First,* in not "assessing and levying, in addition to the regular taxes, the amount due upon said relators' judgment and execution, with interest to the time when the same shall be paid to the United States marshal for said district of New Jersey, with costs of these proceedings, to be assessed and levied according to the form of the statute in such case made and provided;" and, *second,* by failing "to fill forthwith any vacancies existing in said board of assessment and revision of taxes for said city of Eliza-

beth." Are the defendants, or either of them, guilty of this alleged disobedience?

It will be noticed that this writ is directed to the mayor, the comptroller, and the treasurer of the city of Elizabeth, as well as to the common council and the board of assessment and revision of taxes. The duties commanded to be performed are the "assessment and levying of a tax," and the "filling of vacancies" in one of the municipal boards. The "mayor," the "comptroller," and the "treasurer" of the city of Elizabeth are statutory officers, exercising powers, and performing duties, clearly defined and limited by the charter of the city, or by acts supplementary thereto. Unless within them can be found, clearly and undisputably expressed, the power necessary to an obedience of this writ, it must be held that such power has not been granted. It will hardly be contended that the broadest construction possible of these statutes will result in the finding of any authority vested in the officers named to "levy taxes" or "fill vacancies." On the contrary, the power to perform these municipal acts is, by the charter of the city of Elizabeth, expressly vested elsewhere; and, had these officers attempted to obey this writ in these respects, they would undoubtedly have been guilty of an assumption of power not granted to them, expressly or by implication, and by such usurpation would have rendered themselves liable to impeachment, and to criminal indictment. As to these officers, therefore, this writ must be held to be nugatory. The law never seeks to command the impossible, and it has always been held by the courts of this country, as well as by those of England, that "impossibility of obedience" is a good and sufficient return to a writ of *mandamus.* Shortt, Mand. 390; *Rex* v. *Round,* 4 Adol. & E. 139; *Rex* v. *Railway Co.,* 1 El. & Bl. 372, 381; *State* v. *Perrine,* 34 N. J. Law, 254; High, Extr. Rem. c. 1, § 14.

So far, then, as this motion to attach as for contempt affects the "mayor, the comptroller, and the treasurer" it is denied, but without costs. And I think it proper to say that costs are refused to these defendants because they are, perhaps, guilty of a technical disobedience of the writ in failing to make any return to it. As their intention was to justify their failure to obey its mandate by showing an absolute and inherent want of power, the better practice requires that such justification should be made to appear, not orally, but in a formal return to the writ itself. However, as no harm has come to the relators from the laches of the defendants in this respect, I will permit such return to be made, in this case, *nunc pro tunc.*

The charge of disobedience made against the common council of the city of Elizabeth rests upon a very different basis. The allegation is that the common council is possessed of ample power to "levy taxes," and to fill vacancies in the "board of assessment," yet absolutely refused or neglected to obey the mandate of the writ in these respects. If the allegation be well founded, the defendants, who are members of the common council, are guilty of disobedience as charged. The common council is the legislative body of the municipality. It derives its existence from the charter of the city, and by that charter it is endowed with great and

varied power, covering apparently every conceivable necessity for legislative action that could arise in the ministration of the internal affairs of a large city. Especially has been granted to it ample power for the levying of taxes. Thus in the thirty-first section of the charter of this city it is enacted "that the common council shall have power within the said city to make, establish, publish, and modify, amend or repeal, ordinances, rules, regulations, and by-laws for the following purposes: * * * (33) To adopt all legal and requisite measures for levying and collecting the taxes." Charter City of Elizabeth, tit. 3, § 31. And again, in the sixty-fourth section of the same charter, it is enacted "that the city council shall have power to raise by tax, in each year, such sum or sums of money as they shall deem expedient for the following purposes: * * * (11) For the payment of the interest upon the city debt, and upon temporary loans, and such part of the principal thereof as may be due and payable." *Vide* Charter City of Elizabeth. And that there should be no mistake as to the comprehensiveness of this power, by an act supplementary to the act of incorporation, and approved March 31, 1864, a legislative definition of the term "debt" was obtained, and it was declared that the indebtedness of the city of Elizabeth should be divided into the "general debt," in which should be included the present bonded and floating debt of said city, the amount due or to become due for the purchase of real estate, the building, completion, and furnishing of school-houses, engine-houses, almshouses, market-house, and other public buildings, and loans for the payment of bounties; and the "improvement debt," in which shall be included all liabilities incurred by the city for improvements authorized by the charter, the expenses and costs of which are payable by assessments. It was for a debt of the city of the second class or division—that is, "improvement debt"—that the judgment of the relators was obtained. It seems to me, therefore, the contention of the relators that the common council had ample power to levy a tax to pay their judgment is correct.

The defendants insist that, granting that such power was originally vested in the common council, it has been taken away from it by "A supplement to the charter of the city of Elizabeth," approved April 2, 1869. This supplementary act provides "that, for the purpose of assessing taxes required by law to be levied in the city of Elizabeth, and revising the same, a board of commissioners is hereby constituted, to be known and designated as the 'Board of Assessment and Revision of Taxes in the City of Elizabeth;'" and the insistment is that this board, solely, has the power to levy and assess, by way of tax, moneys to meet the indebtedness of the city. and hence the failure of the common council to obey the writ of *mandamus* in this respect is excusable from want of power. I do not so construe the act. This supplementary act changes the charter of the city in one important respect only: whereas, theretofore, assessors of taxes were simply ward officers, and acted, in assessing city property, independently of each other, thereafter they were officers of the city at large, and acted in all things jointly, as a board. No part of the charter of the city was repealed by this supplement, save

certain sections which referred solely to the duties and powers of ward assessors, and the power of the council to levy taxes was left wholly unimpaired. In fact, the whole effect of this supplement was simply to change a part of the machinery by which the taxes levied by the common council were thereafter to be assessed upon individual property. It will be noticed that the very first clause of the supplementary act states concisely its object, namely, "for the purpose of assessing taxes, required by law to be levied, in the city of Elizabeth." The levying of the tax, the determination of its amount annually, its imposition upon the inhabitants of the city as a corporation, generally,—all this was preliminary to any action of the board of assessment, and this preliminary action was to be taken by the common council, who, by law, were required and empowered to perform it. That this is the true construction of the act I think clearly appears from the fact that legislative authority was repeatedly given to the city of Elizabeth to borrow money, after the passage of the act calling into existence the board of assessment and revision of taxes, yet in every instance such authority was coupled with a duty imposed upon the common council to provide for the payment of the loan by levying a tax. Evidently the construction placed upon the charter and supplements thereto, by the legislature, was that full and ample power to levy taxes for the payment of debt was vested, beyond question, in the common council; otherwise both the legislature and the city would have been parties to the great fraud of borrowing money from innocent lenders, whose only chance of repayment lay in a levying of a tax by a body which was utterly destitute of power to make such levy. I am compelled, therefore, to hold that, in failing to levy a tax to meet the demands of the relators, the common council have disobeyed so much of the writ of *mandamus* as commands them "to levy, in addition to the regular taxes, the amount due upon said relators' judgment."

The other alleged disobedience of this writ consists in the failure of the common council "forthwith to fill any vacancy" existing, or which may exist in the board of assessment and revision of taxes. The return to the writ made by the common council sets forth, *in hæc verba*, "that they have elected the following persons to fill the vacancies in the board of assessment and revision of taxes," naming them. The testimony taken on this motion shows that the writ was served on May 10, 1889, upon the common council, and it was not until the 2d day of September following that any positive action was taken looking towards the filling of the vacancies in the board of revision. It is true that the writ of *mandamus* was, at the meeting of council held on May 10th, referred to the "law committee and city attorney." But for what purpose such reference was made does not appear anywhere in the case. It is to be presumed that the council desired some information, or, perhaps, legal opinion, as to their duty and their course of action. I see nothing specially improper in making such reference, if that was its object. The writ commands action "forthwith," but "forthwith" does not, in this connection, mean that the act commanded must be performed "instantly," but rather that the defendants must set about the performance of the matter com-

manded directly, and do whatever can be done.   *Rex* v. *Commissioners*, 3 Adol. & E. 550.

. If, therefore, this reference of the writ, upon its service, was made in good faith, and the law committee and city attorney had promptly made their report, and the common council had, upon that report coming in, acted as it was commanded to. act, although some delay might have thereby been occasioned, I should have held it not unjustifiable, and the action of the common council would be accepted as a fair compliance with the mandate of the court.   But the testimony in this case shows a very different state of facts.   The writ of *mandamus* was granted after argument before the court, in which the city attorney took part.   All the facts, and the principles of law involved, were well known to him, at least, if not to the law committee.   It could not require much time to advise council upon their rights and their duties.   The writ is precise and explicit in its terms.   The simple reading of it would have made its mandate clear to every member of the council.   And yet no action whatever looking to obedience was taken at the regular or special meetings of the common council held on June 1st, June 15th, June 27th, July 1st, July 24th, August 1st, and August 15th.   At none of these meetings was any request made that the law committee should report on this subject, so that proper action could be taken.   No call for advice and counsel, as to the duty enjoined, from the city attorney; in fact, as the clerk of the common council testifies: "No action whatever was taken by the common council between May 10, 1889, and September 2, 1889, to fill the vacancies in the board of assessment."   I cannot regard this conduct in any wise excusable.   Nor, indeed, is any attempt made to justify it, and, unexplained as it is, it calls for the censure of the court.

On the argument of this motion, counsel for the defendants drew the attention of the court to an act of the state of New Jersey approved March 27, 1878, entitled "Supplement to an act entitled 'An act respecting executions,'" and the contention was that by this act the power to assess and levy moneys in municipal corporations to satisfy an execution against such corporation was exclusively vested in the assessors for taxes in and for such corporation.   The act, certainly, is very broad.   I do not doubt that it applies to judgments recovered in the courts of the United States for the district of New Jersey, by virtue of sections 914, 916, Rev. St., and had the attention of the learned judge, who, sitting in this court, allowed this peremptory writ, been called to it, it is doubtful if the writ would have been granted, without evidence that the provisions of this statute had been followed with strictness.   It presents a simple and efficacious remedy for the collection of claims by the judgment creditors of a municipal corporation, and as such it demands and is.entitled to strict enforcement by the courts.   But I cannot agree with counsel that this remedy is exclusive, as to the levying of the amount necessary to be raised by a municipality to satisfy a writ of execution sued out against it.   It does not, either in terms or by implication, debar municipalities from levying moneys for such purpose in the same manner and through the same agencies as heretofore.   It simply puts upon the assessors of

taxes of municipal corporations a new duty, arising, however, only when certain preliminary action has been taken by the judgment creditor, to-wit, the service upon him of a copy of the writ of execution. If a copy of such writ be not served as directed by this statute, then the duty to assess the moneys to meet it does not attach to the assessor. If it be served, then, without any action of the legislative body of such corporation, the assessor is bound of his own motion to assess, in addition to regular taxes, a sum sufficient to satisfy the execution. In other words, the act simply provided a new statutory remedy, without disturbing the existing procedure. If this construction of the act be sound, it affords no excuse for the failure of the defendants, the common council of Elizabeth, to obey this writ. Besides this, objection is taken too late to be efficacious. Such objection might well be urged against the granting of a peremptory writ of *mandamus*, which always depends upon the sound discretion of the court, guided and limited by fixed principles. But a peremptory writ having been granted, disobedience thereof cannot be justified by showing that another course of procedure, preliminary to the granting of the writ, could have been selected by the relators. In my opinion, the common council has been guilty of disobeying this writ, and the motion for attachment as for contempt is granted.